UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

RODNEY KEATON,

Plaintiff,

v.

CITY OF MIAMI, et al.,

Defendants.

_____/

<u>Case No. 19-22859-Civ-DPG</u>

FILED BY ___MC___ D.C.

MAR 1 0 2023

ANGELA E. NOBLE
CLERK U S DIST CT
S D OF FLA - MIAMI

## <u>PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT AND MEMORADUM OF LAW AND OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>

COMES NOW Plaintiff, Rodney Keaton, who is proceeding in this cause without the representation of counsel, in *pro se*, and respectfully invokes the rule established in *Haines v. Kerner*, 404 U.S. 519 (1972) (holding pro se litigants to "less stringent standards than those applied to attorneys"), and submit the following Cross Motion for Summary Judgment and Memorandum of Law and Opposition to Defendants' Motion for Summary Judgment, and states as follows.

## <u>SUMMARY JUDGMENT STANDARD OF REVIEW</u>

Plaintiff is entitled to summary judgment in his favor if this Court finds "there is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Once

Plaintiff has shown no issue of material fact exists, the burden shifts to the Defendant

to assert a genuine material disputed issue of fact, and it is insufficient to merely

assert that an issue exists. The purpose of summary judgment is "to pierce the

pleadings and assess the proof in order to see whether there is a genuine need for

trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

In *Celotex Corp. v. Catrett*, the Court held that:

> "[S]ummary judgment should be entered only against a
> party who fails to make a showing sufficient to establish
> the existence of an element essential to the party's case,
> and on which that party will bear the burden of proof at
> trial. In such a situation, there can be 'no genuine issue as
> to any material fact,' *since a complete failure of proof
> concerning an essential element of the non-moving party's
> case necessarily renders all other facts immaterial*. The
> moving party is 'entitled to judgment as a matter of law'
> because the non-moving party has failed to make a
> sufficient showing on an essential element of the case with
> respect to which she has the burden of proof."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

To prevail, the moving party must do one of two things: (1) show that the non-

moving party has *no evidence to support its case*, or (2) present "affirmative

evidence demonstrating that the non-moving party will be unable to prove its case

at trial." *United States v. Four Parcels of Real Property*, 941 F. 2d 1428, 1437-38

(11th Cir. 1991) (en banc); *Young v. City of Augusta, Ga.*, 59 F.3d 1160, 1170 (11th

Cir. 1995). In making this determination, the court must view the evidence and all *reasonable* inferences therefrom in the light most favorable to the non-moving party. *Witter v. Delta Air Lines, Inc.*, 138 F.3d 1366, 1369 (11th Cir. 1998).

If the moving party successfully discharges this initial burden, the burden shifts to the non-moving party to establish, by going beyond the pleadings, that there *is a genuine dispute* as to facts material to the non-moving party's case. *Young*, 59 F.3d at 1170. The non-moving party *must do more than rely solely on its pleadings, and simply show that there is some metaphysical doubt as to the material facts*. *Matsushita*, 475 U.S. 586-87 (1986). A genuine dispute of material fact does not exist *unless* there is sufficient evidence favoring the non-moving party for a reasonable jury to return a verdict in its favor. *Anderson v. liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Ritch v. Robinson-Humphrey Co.*, 142 F.3d 1391, 1393 (11th Cir. 1998). A dispute is "*genuine*" if the record taken as a whole could lead a rationale trier of fact to find for the non-moving party. *Allen v. Tyson Foods*, 121 F.3d 642, 646 (11th Cir. 1997). A dispute is "*material*" if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. *Anderson*, 477 U.S. at 248; *Allen*, 121 F.3d at 646.

A mere "*scintilla*" of evidence in favor of the non-moving party, or evidence that is *merely colorable or not significantly probative is not enough* to meet this burden. *Anderson*, 477 U.S at 252. See also, *Mayfield v. Patterson Pump Co.*, 101

F.3d 1371, 1376 (11th Cir. 1996) (conclusory allegations and conjecture cannot be the basis for denying summary judgment).

**1.** **THERE IS NO GENUINE ISSUE IN DISPUTE
AS IT RELATES TO PLAINTIFF'S PROOF**

Here, there is no genuine issue of material fact in dispute as to whether Defendants are liable for violating Plaintiff's constitutional rights under the Fourth Amendment's unlawful seizure, false arrest/imprisonment, and malicious prosecution clauses. Defendants have essentially *admitted* that they had no probable cause to arrest the Plaintiff, but attempts to rely upon the lesser standard of proof asserting an "***arguable probable cause***" theory. (Def. Mot. Sum. Judg. at 2, ¶ 1) (stating, "Defendants had probable cause to arrest [Plaintiff]. Even if the Defendants lacked sufficient information to have probable cause for an arrest ... Defendants only need to show that they had *arguable* probable cause"). Defendants have never attempted to demonstrate "actual" probable cause to make an arrest, but merely asserted that they "had probable cause." (supra). Therefore, the only standard Defendants rely upon is *arguable* probable cause.

Before delving further, and with all due respect, the Defendants have made this *too easy* of a task, and this should not take much of the Court's time. Defendants' so-called *initial* "probable cause," to arrest the Plaintiff, is based on an alleged:

> "[A]nonymous [911] caller complain[ing] that a group of
> approximately six black males were "gambling and selling
> drugs" in the hallway of her apartment complex ... But, of

> those six males, she singled out one—Rodney Keaton,
> who she stated was wearing "blue shorts and a white shirt"
> at 1317 NW 2nd Avenue."

(Def. Mot. Sum. Judg. at 2, ₱ 2). The Defendants were sent to the location to investigate and to be-on-the-lookout (BOLO) for a male named Rodney *wearing blue shorts and a white shirt*. Defendants stated that upon arriving at the location, they saw a male fitting the description [of the person in the blue shorts and white shirt]. (Def. Mot. Sum. Judg. at 2, ₱ 2). Based upon the information from the "*anonymous caller*" regarding six black males gambling and selling drugs in the apartment complex hallway, until the arrival of the Defendants at said location, there is nothing, there, upon which to assert "probable cause" to arrest the Plaintiff.

## 2.   NO REASONABLE SUSPICION OF ANY CRIMINAL ACTIVITY

Defendants have argued that they had "sufficient probable cause to arrest Plaintiff *for a couple of crimes*." (Def. Mot. Sum. Judg. at 7, ₱ 2). Firstly, Defendants reliance on an anonymous caller bore *no indication of reliability* of the caller and the information simply stated that about "six black males was gabling and selling drugs in that area, and identified the Plaintiff by name." Whether the anonymous caller was a foe, or enemy, of the Plaintiff's is unknown.   However, in a case more on and in point with the facts of this case, the U.S. Supreme Court *distinguished* between the accuracy and reliability of the tip in "*identifying the subject*" verses the reliability of the tipster's assertion of "*illegal activity*." The Court held that:

"The reasonable suspicion here at issue [of illegal activity] requires that a tip *be reliable in its assertion of illegality*, not just in its *tendency to identify a determinate person*. It is not sufficient that the officer, *through observation*, can corroborate the tipster's description of the subject, his apparel. And his location. The officer must corroborate the informant's *allegation of criminal conduct.*" (all emphasis added)

*Florida v. J.L.*, 529 U.S. 266, 272 (2000). In *Florida v. J.L.*, an anonymous phone caller told the Miami police that a young black man *wearing a plaid shirt* was standing at a particular bus stop and carrying a gun. Although the call was not recorded, *nothing was known about the informant*. As in the instant case, the Miami police officers were directed to respond to the informant's gun theory. Six minutes later, officers arrived at the scene, noticing three black males standing at the designated bus stop. The officers identified one of the black males (th[at] Defendant) as wearing a *plaid shirt similar to that described in the anonymous tip*. The officers did not see a firearm. (*Florida v. J.L.*, 529 U.S. 268)

The Supreme Court noted that in order to justify a detention, the officer must reasonably suspect *that the individual is engaged in criminal activity*. When the officer relies on an anonymous tip, this inquiry is *more difficult* because the anonymous informant's information, *standing alone*, "seldom demonstrates the informant's basis of knowledge or veracity." *Florida v. J.L.*, 529 U.S. 270; quoting *Alabama v. White*, 496 U.S. 325, 329 (1990). Applying the reasonable suspicion standard, the Court, in *J.L.*, held that the anonymous tip regarding the defendant's

6

gun possession *lacked sufficient indicia of reliability to support reasonable suspicion*. The allegation of *criminality* was neither substantially detailed nor adequately corroborated. Therefore, the officer's stop-and-frisk of the defendant was unreasonable. (*Florida v. J.L.*, 529 U.S. 274). That same analysis and findings should apply in the instant case where the *facts are virtually indistinguishable.*

There, the Supreme Court focused its *analysis on the anonymity of the informant*. In the instant case, as shown from Defendants' Exhibit B (*informant's recorded anonymous 911 conversation*), the informant stated that she "**wanted to remain anonymous**." The Supreme Court *reasoned* that because the informant had not revealed his or her identity, he or she could not be held accountable for a fabricated tip; thus, he or she could lie with impunity. The Court also noted that the tip was devoid of details, including details predicting the subject's future actions; sufficient details could support an inference that the informant had an inside information about the subject's illegal activity. (Id. at 271)

Worthy to mention, however, is the fact that the High Court stated that "any blanket "firearm exception" to the Terry [v. Ohio] reasonable suspicion requirement … **would quickly be expanded to _drug-related tips_** *and beyond to any tip*." *Florida v. J.L.*, 529 U.S. 272-73). That reasoning, Your Honor, is being manifested in the instant case with this Plaintiff, and the same should be *rejected* as the so-called reasonable suspicion in this case is no greater than that in *Florida v. J.L.*, 529 U.S.

7

266 (2000). Here, there was a caller stating only that "about six black males were *gambling and selling drugs*, and although this Plaintiff was named," there was no *corroborating evidence* of "**criminal activity**" and no details to *demonstrate drug selling*. Therefore, the Defendants, in this case, had no probable cause to seized, search, nor arrest the Plaintiff.

**3.    DEFENDANTS LACKED PROBABLE CAUSE
AND/OR ARGUABLE PROBABLE CAUSE TO
TO ARREST FOR *EITHER* ALLEGED CRIME**

Defendants, by their own admissions, did not have any lawful reason(s) to arrest the Plaintiff. While the Defendants assert that they "[could have]" arrested Plaintiff for "**a couple of crimes**," which Defendants contends, *erroneously*, satisfied the "*arguable*" probable cause standard to arrest Plaintiff, they **did not arrest Plaintiff** for those so-called crimes. (Def. Mot. Sum. Judg. at 7, ⁋ 2)

**THE ALLEGED *FIRST* CRIME**

To begin with, Defendants argue that they "had *sufficient probable cause* to arrest Plaintiff for **resisting without violence**, which is sometimes referred to as "**obstruction without violence**." Defendants correctly cites the language and elements of the statute, Section 843.02, Florida Statutes, and, thus, the same will not be wholly recited hereat. (Def. Mot. Sum. Judg. at 7, ⁋ 2). Suffice it to say, however, that the statute states, in relevant part, that "[w]hoever shall resist, obstruct, or oppose any officer ... *in the lawful execution of any legal duty*, without offering or

doing violence to the person of the officer, shall be guilty of a misdemeanor in the first degree."

Defendants claim that they are *justified* for the arrest in that, according to Defendants, "[t]he Defendants had authority to order Plaintiff to "stop" when he—an individual fitting the description of a BOLO for selling drugs and gambling—ran or hustled in a high-crime area at night." (Def. Mot. Sum. Judg. at 8-9). Conversely, however, Defendants *concedes* that "*flight* **by itself is *not sufficient* to justify a resisting without violence charge**," (Def. Mot. Sum. Judg. at 9, ⁋ 1) Defendants argue, however, that "*flight, coupled with an officer making a lawful command to stop,* by an individual *who knows* he is being *detained* **is enough** to find a lawful order has been issued ... provid[ing] sufficient probable cause **to arrest Plaintiff** *for resisting without violence* under Florida law." (Def. Mot. Sum. Judg. at 9, ⁋ 1-2).  Plaintiff was not "*being detained*," and, in fact, no officer *pointedly stated* that he or she *directed* the "Plaintiff, out of the six black males," *by name*, **which they had**, or *by description*, **which they also had**, to stop.  Because the evidence, *itself*, makes clear that the "Plaintiff" was **not personally referenced** *by any police officer* in its so-called "order to stop," there could not have been a valid order, "directed to the Plaintiff," so as to charge him with resisting without violence."

Based on Plaintiff's version of the arrest, a reasonable officer could not have thought that he had *probable cause* or even *arguable* probable cause to *arrest* Mr.

Keaton upon the officers' *observance* of Mr. Keaton—who fitted the description of an anonymous caller simply alleging that a group of black males were gambling and selling drugs in an apartment complex—where Mr. Keaton testified that he "*didn't see the officers coming at [him], and didn't know any officers were, in fact, coming because all he could see, in the jet-black darkness, was someone dressed in all black and he thought those were people coming to rob them* so he, and the others, *scattered* into their respective apartments. (See Plaintiff's Deposition) (as Defendant's **Exhibit F** at 38, L. 15-17; at 40, L. 21-25; at 41, L. 1-6; at 41, L. 21-25).

Plaintiff also testified that the stereo **was turned up loud and it was hard to hear anything except the big speakers and music**. (Id., at 42, L. 1-2) Plaintiff testified that "**no one announced that they were police, that they, the police, didn't say anything, to his knowledge, and that's why *they didn't know who it was* or what was going on *so they went inside*.**" (Id., at 43, L. 3-9) Clearly, Mr. Keaton had *not violated any laws*, he did not "obstruct" or "hinder" the officers in the *lawful discharge of their duties*. He simply went inside the apartment *out of fear a "robbery" was imminent and that he was in immediate danger.*

Even if, as the Defendants assert, they gave a "[blanket]" order to "stop," Defendants were given a *description* of the Plaintiff, Rodney Keaton, as well as the **color of clothing he was wearing** on the night in question. (Def. Mot. Sum. Judg.

at 2, ¶ 2) (stating that "Rodney Keaton [the individual identified] was **_wearing blue_**

**_shorts and a white shirt_**" [at the said address]). Yet, while Defendants argue that

they gave an order "to stop," (Def. Mot. Sum. Judg. at 9, ¶ 2), the evidence clearly

shows that the Defendants, **despite having this description of Plaintiff's clothing**,

that Defendants' so-called command to stop _could have been directed at any of the_

_alleged_ "_six black males_" because there is _no evidence_ that the Defendants _directed_

_their command_ to **Mr. Keaton** by **_specifically stating_**, something to the effect of

"**stop—you in the blue shorts and white shirt**." The command to "stop," again

**could have been directed at or towards "_any of the six black males_**" as **they all**

**scattered at the same time** to their respective apartments. (See Defs' Exhibit F, at

42, L.20-22) (Depo. of Plaintiff).

Nothing in Defendants' motion _remotely suggest_ that the Defendants

"**specifically referred to Plaintiff**" when the command to stop was allegedly

announce. Therefore, Plaintiff could not have "_knowingly_ and _willfully_" resisted,

obstructed, or hindered, any of the Defendants _in the lawful discharge of their_

_official duties_. Moreover, at that juncture, there was no evidence upon which a

reasonable officer would believe he had _probable cause_ to detain the Plaintiff, based

on the anonymous tip. Plaintiff, having testified that he had previously been shot,

had every right, upon not knowing **_who was coming out of the darkness_**, to "scatter

into the apartment." (<u>See Depo. of Officer/Defendant Rafael Muina; Exhibit E at pg.</u>

<u>4, ⫐ #27) (explaining Plaintiff said he "ran because he had been shot in the past"</u>).

Because there was no directive given "to Plaintiff," *flight alone* does not

constitute resisting without violence. There was no "resisting without violence" to

any officer, thus, no probable cause or arguable probable cause existed to arrest or

detain Plaintiff under this evidence.

## THE ALLEGED *SECOND* GROUND

As their alleged second basis to arrest the Plaintiff, Defendants argue that "a

person who is not licensed under [section] 790.06 and who carries a concealed

firearm on or about his person commits a felony of the third degree." (<u>Def. Mot.</u>

<u>Sum. Judg. at 10, ⫐ 2</u>) There, Defendants have argued, but the evidence, itself, refutes

the claim, that "Sergeant Pastor swears that he [nothing is stated here and Plaintiff

assumes it error] Plaintiff hiding a firearm that was likely on Plaintiff's person, as

evidenced by Plaintiff grabbing his waistband and later having it in or near his hands

within the apartment." (Id.) Defendants argued that, based on the above statement

by Sergeant Pastor, that "Sgt. Pastor had sufficient probable cause [to] arrest Plaintiff

for unlawful conceal/carry since Plaintiff lacked a license to do so." (Id.) Defendant

further argued that, [a]nd Officer Muina had probable cause by virtue of the "fellow

officer" rule, as he determined he had no reason to doubt Sgt. Pastor because the

firearm was located exactly where Sgt. Pastor said he saw it." Defendants,

alternatively, argued that, "[e]ven if Plaintiff later contends that Sgt. Pastor was mistaken as to what he say, Plaintiff's grabbing of his waistband and proximity to the revolver later in time would permit a reasonable officer to have probable cause that Plaintiff had the firearm earlier under the circumstances." (Id.)

Importantly, however, Defendants have confused the law. There is a difference between "*bare suspicion of criminal activity and/or a hunch*," as opposed to "*reasonable suspicion of criminal activity*." A hunch or bare suspicion of criminal activity is all, at the most, Defendants could have entertained in this case based on the Deposition of Defendants, and based upon the motion for summary judgment itself. To be sure, it is important to note that "approximately five (5) days after Plaintiff was arrested (10-24-2016) and charged with th firearm, the true owner of the firearm not only gave a Sworn Affidavit to Defendants (Miami Police Detectives) that the firearm was lawfully his, the true gun owner also swore that he "left the gun under the cushion [of the couch where it was found by police at the location of the incident]. (See Defendants' Exhibit J, here, listed as Plaintiff's Exhibit A) (Sworn Affidavit of Javano Wagnac) Yet, Defendants refused to dismiss the charge regarding the firearm against Plaintiff, but *maliciously and with bad intent* continued the prosecution UNTIL the jury and Judge found him NOT GUILTY of the charges approximately TWO YEARS later, all while Plaintiff remained incarcerated for a crime he did not commit.

**4.      DEFENDANTS CONCEDE THAT THE
         PLAINTIFF NEVER HAD POSSESSION
         OR CONTROL OF THE FIREARM**

Defendants, possibly albeit at unawares, have demonstrated that *they neither*

*had probable cause nor arguable probable cause to arrest Plaintiff* for possession

of a firearm by a convicted felon. First and foremost, Defendants asserts that:

> "Sergeant Pastor ran behind the Plaintiff, with Officer
> Muina following closely behind … They were capable of
> seeing clearly inside [of the apartment] because the
> apartment was very well lit in comparison to the dimly lit
> hallway. Looking inside, *Sergeant Pastor saw a revolver's
> "grip" on or by Plaintiff's right hand* as Plaintiff pulled
> his right hand away from a couch, slamming the couch
> cushion on top of the revolver with his left, in one
> continuous motion, presumably to hide it. Officer Muina,
> likewise, *avers that he saw Plaintiff pull his hand away
> from the couch where, indeed, a revolver was later found.*
> Sergeant Pastor ordered Plaintiff to step away from the
> firearm and show his hands, as Plaintiff was in reaching
> distance. Plaintiff stepped outside of the apartment, where
> he was patted down and handcuffed."

(Def. Mot. Sum. Judg. at 3, ¶ 2-3; at 4, ¶ 1) Sgt. Pastor states that **he saw** a revolver's

"grip" **ON *OR* BY** Plaintiff's right hand. This "*guessing*" is **specious** or insufficient.

Either Sgt. Pastor SAW Plaintiff's hand **ON** the firearm, or he did **NOT** see

Plaintiff's hand **on** the firearm. Either Sgt. Pastor SAW Plaintiff's hand **BY** the

firearm or he did **NOT** see Plaintiff's hand **by** the firearm. It ***cannot be both ways***,

so as to provide Sgt. Pastor with a pass on whether he SAW IT, OR HE DID NOT

SEE IT!!! Under such a statement, Plaintiff cannot be charge with "possession of a

firearm." What is more supportive is the fact that officer Muina, during his deposition, gave a *different accounting* of what Defendants alleges in their motion for summary judgment.

In Defendant's (Officer Rafael Muina's) Deposition, this Defendant testified that "Sgt. Pastor told me that he saw a firearm in plain view under the couch and that <u>he believed Mr. Keaton had attempted to hide it [there]</u>." (<u>Defendants Exhibit E at 3, ¶ #24</u>) There, Officer Munia does not aver, as the motion for summary judgment alludes to, state that "he," Officer Muina, "likewise, *avers that he saw Plaintiff pull his hand away from the couch where, indeed, a revolver was later found*." Instead, Officer Muina swears under oath that "Sgt. Pastor TOLD HIM that he, Sgt. Pastor, saw a firearm in plain view. This inconsistency is crucial, as it demonstrates that Officer Muina, as stated in the summary judgment motion, did **not** actually "see Plaintiff pull his hand away from the couch where the firearm was later found."

More importantly, Officer Muina goes further, in his Sworn Deposition, to demonstrate that he never had any arguable probable cause to arrest Plaintiff when Officer Muina testified that:

> "Plaintiff said [that] he ran because he had been shot in the past [<u>Depo. at 4, ¶ #27</u>] … [and] I viewed Plaintiff's indications that he had been shot by members of the community "**as evidence**" *that he, in fact, was in possession of the firearm and hid it under the couch* **because *I* believe** a person in fear of their life would brandish a firearm to defend themselves, not tuck it under a couch." (<u>emphasis added</u>)

(Defendants Exhibit E at 4, **P** #32) There, Officer Muina states that **"his evidence" of Plaintiff's guilt** for possession of the firearm was based **"entirely"** on **"_Plaintiff's indications that he had been shot by members of the community_,"** and based on *"that evidence," **Plaintiff being shot**,* that Officer Muina determined, not by seeing Plaintiff with a firearm, that Plaintiff *"**was in possession of the firearm**."* This theory of guilt, based on Plaintiff being shot, is so farfetched until it needs no further discussion. The fact that Officer Muina has contradicted Sgt. Pastor's theory, or that of the motion for summary judgment, clearly there was no probable cause to arrest Plaintiff based on Officer Muina's account of the facts, nor based on the alleged account of Sgt. Pastor, AS TOLD TO Officer Muina.

Seeing an *alleged* "firearm," which, for argument's sake, *was not readily "known," for a fact, to be a firearm*, but rather, could have been "innocent conduct,' such as a "B-B Gun." Therefore, the Defendants could only *"assume"* that the item they saw (**the 'grip" of a supposed firearm**) was a *real* firearm. Under those facts, even if the item was, as it were, a real firearm, Defendants had no way of knowing that. In other words, Defendants relied upon *"circumstantial"* evidence, (a visual siting of a handle) that Plaintiff had possessed a firearm, and based on that, "handcuffed the Plaintiff," in violation of the Fourth Amendment right against seizures and false arrest without probable cause. That is so because, *until after Defendants had seized and arrested Plaintiff*, there was *no evidence* that what

Defendants allegedly witnessed was a firearm or crime. Because the conduct, firearm, could have been completely innocent conduct, "where the only proof of guilt is circumstantial, no matter how strongly the evidence may suggest guilt, a conviction could have been sustained unless the evidence was "inconsistent with any reasonable hypothesis of innocence." Moreover, an officer cannot conduct an unlawful seizure in search of evidence of a crime, and subsequently discover evidence and then justify the charge with the evidence of the illegal seizure. See _Terry v. Ohio_, 392 U.S.1 (1968). Additionally, because the firearm was discovered in the home of someone, other than Plaintiff, there was a strong probability that the firearm belonged to another, and not Plaintiff.

In any event, the "**continued**" prosecution of the Plaintiff, **after October 24, 2016** (just 5 days after Plaintiff was arrested by Defendants), when, in fact, the true owner of the firearm visited the Police Department and expressly and clearly stated that Plaintiff, Rodney Keaton, had been "wrongly arrested" for the firearm, of which said person claimed lawful ownership too, and stated that he had left the firearm exactly where Defendants had discovered it, the same was sufficient for the Defendants, at that point in time, to dismiss the charges against Plaintiff, but Defendants refused to do so in the face of this 'indisputable evidence." Therefore, even if only from October 24, 2016, until Plaintiff was acquitted by the jury and the judge, Defendants are liable for "malicious prosecution" and "false arrest and

imprisonment" for nearly or more than TWO YEARS. This Court should, on this ground alone, without waiving the other arguments, find that Defendants are not entitled to "Qualified Immunity," nor summary judgment; but rather, the Court should find IN FAVOR OF PLAINTIFF, on his Cross Motion for Summary Judgment on each of his claims.

Nevertheless, taking the evidence in the light most favorable to the Plaintiff, as this Court is required to do in reviewing a motion for summary judgment under qualified immunity, *Saucier v. Katz*, 533 U.S. 194, 201 (2001), Plaintiff is entitled to summary judgment as a matter of law. And in closing, Defendants claim that "Plaintiff cannot rebut with clearly established law" is likewise without foundation.

There was neither *probable cause* nor "*arguable*" probable cause for Plaintiff's false arrest and imprisonment from someone else's home. The Supreme Court, in *Anderson v. Creighton*, 483 U.S. 635, 638-39 (1987), made clear that in order to overcome a claim of "qualified immunity," a civil rights plaintiff must show that the right that was allegedly violated was clearly established at the time of the defendant's conduct.

> "[Q]ualified immunity [is] defeated if an official knew or should have known that the action he took within the sphere of official responsibility would violate the rights of the [plaintiff], or if he took the [his] action with the malicious intention to cause a deprivation of constitutional rights or other injury."

*Wood v. Strickland*, 420 U.S. 308, 322, 43 L. Ed 2d 214, 95 S. Ct. 992 (1975). It was well-settled law, at the time of this occurrence, that an arrest without probable cause is an unreasonable seizure that violates the Fourth Amendment of the United States Constitution. See *Brown v. City of Huntsville*, 608 F. 3d 724 (11ᵗʰ Cir. 2010); and *Crosby v. Monroe County*, 394 F. 3d 1328, 1332 (11ᵗʰ Cir. 2004).

The United States Supreme Court has held that "a detention, *even if there appeared to be probable cause at the start of the process*, was grounds for a Fourth Amendment claim *when probable cause was later not found to exist*." Therefore, as here, Plaintiff's arrest and detention was a violation of his Fourth Amendment rights. Specifically, the High Court stated that:

> "The Fourth Amendment prohibits government officials from detaining a person absent probable cause. And where legal process has gone forward, *but has done nothing to satisfy the probable-cause requirement*, it cannot extinguish a detainee's Fourth Amendment claim."

See *Manuel v. City of Joliet, Illinois*, 580 U.S. ___, 137 S.Ct. 911, 197 L. Ed. 2d 312 (2017). Explaining, the Court went on to state:

> "That was the case here: Because the judge's determination of probable cause was based solely on fabricated evidence, it did not expunge *Manuel's* Fourth Amendment claim when he sought relief not merely for his arrest, but also for his pretrial detention."

As the Court stated in *Manuel*:

> "That the pretrial restraints … arose pursuant to a *legal process made no difference*, given that they were allegedly *unsupported by probable cause*."

Plaintiff urges this Court to deny Defendants' motion for summary judgment, their qualified immunity request, and grant Plaintiff's motion for summary judgment on all claims based on the indisputable evidence presented, gratefully, also by Defendants of their wrongdoings.

## CONCLUSION

WHEREFORE, based on the foregoing, Plaintiff respectfully urges the Court to grant all relief requested, and any and all relief to which he is and/or may be entitled to as a matter of law.

*Rodney Keaton*
Rodney Keaton-Pro se
467 N.W. 8th Street, Apt. 6
Miami, Florida, 33136

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been sent, by First Class U.S. Mail, to attorney for the Defendants, Ms. Victoria Mendez, located at 444 S.W. 2nd Avenue, Suite 945, Miami, Florida, 33130-1910, on this 7th day of March, 2023.

Respectfully submitted,

*Rodney Keaton*

Rodney Keaton-Pro se
467 N.W. 8th Street, Apt. 6
Miami, Florida, 33136

F/6- 021274

EXHIBIT
#A

October 24, 2016

Javano Wagnac

1317 NW 2nd Avenue

Apt. #8

Miami, FL 33136

To Miami Police, Detectives and Whom It May Concern:

On 10/19/16, an incident took place involving my gun a .38 special revolver that lead to the wrongful arrest of my neighbor Rodney Keaton. I have the gun for personal protection given I live in Overtown (a drug/high crime area). We were all at a neighbor, Robert's, house discussing sports, politics etc. I retired early and inadvertently left my gun under the cushion at Robert's house. The gun is mine and was legally purchased by me. Mr. Keaton doesn't own a gun and did not have a gun on him that day. Asking for the return of my property and that the charges be dropped against Mr. Keaton.

*JAVANO WAGNAC*

JAVANO WAGNAC

Teaira Daltesha Smith
COMMISSION # FF109903
EXPIRES: March 26, 2018
WWW.AARONNOTARY.COM

Pl's Exh. A

EXHIBIT
A

Mr. Rodney Keaton
467 N.W. 8th Street, Apt. #6
Miami, Florida 33136

Legal Mail



Retail

U.S. POSTAGE PAID
FCM LG ENV
DANIA, FL 33004
MAR 07, 2023
$2.22
R2305M143688-06

RDC 20

33128




To. Clerk of Court
United States District Court
Southern District of Florida
400 N. Miami Avenue
Miami, Florida
33128